UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KEVIN PATRICK GALLAGHER,

          Plaintiff,

               v.

COMMISSIONER,

          Defendant.

**Hon. Hugh B. Scott**

**17CV1270**

**CONSENT**

**Order**

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 14 (plaintiff), 19 (defendant Commissioner)).

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits.

## PROCEDURAL BACKGROUND

References noted as "[R. __]" are to the certified record of the administrative proceedings, filed with this Court (Docket No. 9).

The plaintiff ("Kevin Gallagher" or "plaintiff") filed an application for disability insurance benefits on January 15, 2014 [R. 22]. That application was denied initially. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case de novo and concluded, in a written decision dated October 3, 2016, that the plaintiff was not

disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on October 25, 2017, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on December 5, 2017 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 14, 19), and plaintiff duly replied (Docket No. 20). This case was scheduled for oral argument and a status conference on January 30, 2019 (Docket No. 21), but due to the failure to enact appropriations, the proceedings were stayed (Docket No. 22). Upon further consideration, this Court then determined that the motions could be decided on the papers.

## FACTUAL BACKGROUND

Plaintiff, a 23-year-old with high school education, had no past relevant work [R. 35]. He contends that he was disabled as of the onset date of November 30, 2012 [R. 22], when he stopped working [R. 24]. Plaintiff claims the following impairments deemed severe by the ALJ: depressive disorder, anxiety disorder, post-traumatic stress disorder, and post-concussion syndrome/traumatic brain injury [R. 24]. Plaintiff argues his disabilities arose from a 2005 automobile accident in which he survived but another passenger did not (see Docket No. 14, Pl. Memo. at 13).

The ALJ found the relevant period for this claim is November 30, 2012, to June 30, 2014, the date of last insured [R. 28].

## MEDICAL AND VOCATIONAL EVIDENCE

Plaintiff claims disability due to concussion with memory loss, confusion and an inability to focus for long periods, depression, anxiety, headaches, panic attacks, social anxiety, sleep

issues, inability to follow directions, and unbalance or dizziness [R. 27, 192]. Plaintiff testified that in 2005 he was injured in a serious car accident, and since then suffered [R. 27]. The ALJ considered records outside of the relevant period as background [R. 28]. Plaintiff was treated for post-concussion syndrome after the 2005 accident [R. 28-29]. In May 2012, plaintiff worked at an auto parts store and considered returning to college [R. 29]. In November 2012 plaintiff had a second car accident [R. 29]. In November 2013, plaintiff reported stopping vestibular rehabilitation due to having a full-time job [R. 29].

The ALJ found that plaintiff had a residual functional capacity to perform a full range of work at all exertional levels with exertional limitations [R. 27]. The ALJ noted that plaintiff was limited to performing simple, routine tasks and to make simple, work-related decisions [R. 27]. Plaintiff would need a work environment where changes are minimal; he could tolerate occasional contact with supervisors, co-workers, and the public [R. 27]. The ALJ found that plaintiff could not engage in work that involves conveyor belts or assembly lines; cannot climb ladders, ropes, or scaffolds; and cannot tolerate exposure to unprotected heights or moving mechanical parts [R. 27].

With this capacity to perform all levels of work but compromised by nonexertional limitations, the vocational expert opined that a hypothetical claimant like plaintiff was able to perform various unskilled occupations such as janitor, warehouse worker, or housekeeper [R. 35, 78-79]. The ALJ then hypothesized that a claimant like plaintiff but who would be off task 25% of the work day, the vocational expert opined that an employer would not tolerate more than one unscheduled absence per month or ten to twelve a year [R. 36, 79]. If that claimant required three verbal reminders that such work would be assistive or accommodated [R. 36, 79-80]. The

3

ALJ rejected these last opinions because the evidence does not support the proffered limitations [R. 36]. As a result, the ALJ held that plaintiff was not disabled [R. 36].

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker,

675 F.2d 464, 467 (2d Cir. 1982).  Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform."  Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467.  If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992).  However, it should be noted that the ALJ has an affirmative duty to fully develop the record.  Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past.  20 C.F.R. §§ 404.1520(e) & 416.920(e).  When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other

people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington, supra, 37 F.3d at 1442.

Pertinent to this case is the treating physician's rule (as of October 2016)[1], wherein a treating physician's opinion should be given controlling weight where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and is not inconsistent with the other substantive evidence of record, 20 C.F.R. § 404.1527(c)(2) (2016) (Docket No. 19, Def. Memo. at 20-21). If not given controlling weight, the ALJ must provide good reasons for not crediting it, McCarthy v. Colvin, No. 13CV6467, 2014 WL 6065675, at *7 (W.D.N.Y. Nov. 13, 2014) (Telesca, J.) (Docket No. 14, Pl. Memo. at 14); see Sanders v. Comm'r of Soc. Sec., 506 F. App'x 74, 77 (2d Cir. 2012) (Docket No. 19, Def. Memo. at 21). If not giving the controlling weight to the treating physician's opinion, the ALJ then needs to consider various factors in assessing that opinion, such as the examining relationship, its extent, medical support for the opinion, its consistency, and the physician's specialization, and other relevant factors, 20 C.F.R. § 404.1527(c) (Docket No. 14, Pl. Memo. at 14).

*Application*

In the instant case, the issue is whether the ALJ had substantial evidence to support the decision rendered denying disability coverage. Plaintiff objects to the treatment of the opinion

---

[1]The Social Security Administration issued new regulations surrounding the acceptable medical sources and how to consider medical opinions, 82 Fed. Reg. 15,132 (Mar. 27, 2017), 82 Fed. Reg. 5,844 (Jan. 18, 2017), effective for claims filed on or after **March 27, 2017**. Docket No. 19, Def. Memo. at 20 n.2.

of treating specialist, Dr. John Leddy (Docket No. 14, Pl. Memo. at 13-20, 15 n.4; [cf. R. 600-01, 701-06, 226-27, 257, 259, 395, 264, 603-04, 852, 858, 864]), first by not recognizing the substantial evidence supported the doctor's July 2016 opinion (Docket No. 14, Pl. Memo. at 15-20; [R. 701-06, 33]). Next, the ALJ erred (according to plaintiff) by giving greater weight to the consultative examiner than Dr. Leddy who had treated plaintiff over a period (Docket No. 14, Pl. Memo. at 15). He states that the ALJ failed to provide good reasons for rejecting this opinion (id. at 20-22). As a result, absent Dr. Leddy's opinion plaintiff concludes that the ALJ's findings were not supported by substantial evidence (id. at 23-26). He next argues that ALJ's credibility determination was also flawed (id. at 26-29). Plaintiff concludes his disability was so obvious that the matter should be remanded to calculate benefits (id. at 29-30).

I.      Consideration of Dr. Leddy's Opinion as Treating Source

Plaintiff was treated for post-concussion syndrome symptoms with Dr. John Leddy, a brain injury specialist (Docket No. 14, Pl. Memo. at 13; [R. 395]), treating him six times between 2012 and 2014 (Docket No. 14, Pl. Memo. at 15; [R. 259, 395, 264, 852, 864]). In January 2014, Dr. Leddy opined that plaintiff was unable to work because of post-concussion syndrome and anxiety ([R. 32, 257]; Docket No. 19, Def. Memo. at 21). The ALJ gave this opinion little weight because it was not supported by the overall record including Dr. Leddy's own findings (such as noting in November 2013 that plaintiff stopped vestibular rehabilitation due to his working) [R. 32-33, 262]. In March 2014 and March 2015 questionnaires, Dr. Leddy stated that plaintiff was "very limited" in various physical and mental activities ([R. 33, 226-27, 603-04]; Docket No. 19, Def. Memo. at 21), concluding that "any work was not recommended"

7

due to plaintiff's memory loss, anxiety, depression, inability to follow or remember instructions, and survivor's guilt [R. 33, 227]; Docket No. 19, Def. Memo. at 21).

On July 25, 2016, Dr. Leddy completed a Brain Injury Residual Functional Capacity Questionnaire [R. 701] in which the doctor concluded that plaintiff's impairments would frequently interfere with his attention and concentration [R. 706]. Dr. Leddy concluded that plaintiff's limitations were exhibited since November 2012 [R. 706].

The ALJ gave the July 2016 questionnaire little weight because it was from "a checkbox form, without explanation for specific limitations or reference to specific objective findings" [R. 33] and that opinion was rendered years after the relevant period in 2012 [R. 33]. The ALJ, however, considered this opinion for plaintiff's ability to tolerate certain workplace hazards [R. 33, 705]. Generally, the ALJ concluded that plaintiff's alleged mental impairments, depressive disorder, anxiety, and post-concussion syndrome had improved over time "which would not support the claimant's allegations of disabling impairments," noting that plaintiff worked in 2012 prior to filing for disability benefits and noted improvements in 2013 when taking medication [R. 32, 807, 831, 834 (treatment notes of Dr. Junaid Hashim)]. The ALJ diminished Dr. Leddy's November 2013 opinion because the doctor noted that plaintiff said he stopped vestibular rehabilitation due to having a full-time job [R. 33, 262].

Defendant argues that Dr. Leddy's findings that plaintiff was unable to work or work was not recommended were ultimate conclusions on plaintiff's disability that were left for the Commissioner to determine (Docket No. 19, Def. Memo. at 22).

First, this Court considers the July 2016 opinion relative to the relevant period of November 2012 to June 30, 2014. The ALJ considered plaintiff's treatment history after this

8

relevant period [R. 31]. Dr. Leddy's July 2016 opinion did note that it reflected plaintiff's limitations since November 2012 [R. 706]. The ALJ cannot object to Dr. Leddy's 2016 opinion because of its timing where the ALJ considered post-period events.

As for acceptance of the merits of Dr. Leddy's conclusions, plaintiff argues that the ALJ erred in rejecting this opinion since Dr. Leddy did state the clinical findings that supported it (Docket No. 14, Pl. Memo. at 16; [R. 702]). Dr. Leddy, however, did state clinical findings in that questionnaire, an unstable tandem gait and abnormal ocular convergence ([R. 702]; Docket No. 14, Pl. Memo. at 16). Plaintiff emphasized the number of times Dr. Leddy treated plaintiff and Dr. Leddy's specialization in treatment of concussions (Docket No. 14, Pl. Memo. at 13, 15-16).

The ALJ's objection is that the 2016 opinion was rendered on a checkbox form (id. at 22). In Chalk v. Berryhill, No. 16CV6494, 2017 WL 4386811, at *13 (W.D.N.Y. Sept. 29, 2017), Magistrate Judge Jonathan Feldman rejected a similar reliance upon a mere checkbox to diminish a physician's opinion. The ALJ there also rejected a physician's opinion because it was made on a checkbox form, id. at *9. "Trying to justify the rejection of Dr. Sheehan's otherwise relevant opinion based on the form on which it was rendered was error," Chalk, supra, 2017 WL 4386811, at *13; see Merritt v. Comm'r of Soc. Sec., No. 15CV6633, 2016 WL 6246436, at *8 (W.D.N.Y. Oct. 26, 2016) (Siragusa, J.) (notwithstanding the lack of narrative on checkbox form, ALJ required to consider the opinion on the form). If that ALJ felt that the form lacked sufficient narrative, the ALJ should have contacted the doctor and requested additional information, Chalk, supra, 2017 WL 4386811, at *13. The format of the document was deemed

9

immaterial, id. (citing cases). The fact that the ALJ objected to the checkbox form from Dr. Leddy here is of no moment, see id.

Plaintiff's motion for judgment on this ground is **granted**.

II. Remand for Determination of Benefits?

The remaining issue is whether this case is remanded for further fact finding or for determination of benefits. District Courts are authorized to affirm, reverse, or modify the Commissioner's decision "with or without remanding the cause for a rehearing," 42 U.S.C. § 405(g). Remand for calculation of benefits is appropriate only in cases where the record "provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose," Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980); see also Butts v. Barnhart, 388 F.3d 377, 385-86 (2d Cir. 2004). Courts must avoid "contribut[ing] any further to the delay of the determination of [a claimant's] application by remanding for further administrative proceedings" when such an instruction would prove unnecessary, Diaz ex rel. E.G. v. Comm'r of Soc. Sec., No. 06CV530, 2008 WL 821978, at *8 (W.D.N.Y. Mar. 26, 2008). Another court recognized "delay as a factor militating against a remand for further proceedings where the record contains substantial evidence of disability," McClain v. Barnhart, 299 F. Supp. 2d 309, 310 (S.D.N.Y. 2004).

As discussed above, further findings are necessary here. The proper scope of remand is further evaluation of facts (see Docket No. 19, Def. Memo. at 29) rather than determination of benefits.

## CONCLUSION

For the foregoing reasons, plaintiff's motion (Docket No. 14) judgment on the pleadings is **granted**, and defendant's motion (Docket No. 19) for judgment on the pleadings is **denied**. Thus, the decision of the defendant Commissioner is **vacated and remanded** for further proceedings consistent with the above decision to find additional facts and not merely to determine plaintiff's benefits, pursuant to sentence four of 42 U.S.C. § 405(g), see Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of the Court shall close this case.

So Ordered.

*s/Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
February 5, 2019